MITCHELL v. MILLER.

5-902                                                    289 S. W. 2d 523

Opinion delivered April 23, 1956.

*Herrn Northcutt* and *W. G. Wiley,* for appellant.

*W. E. Billingsley* and *Chas. F. Cole,* for appellee.

LEE SEAMSTER, Chief Justice. John T. Mitchell died testate in Izard County, Arkansas, on January 24, 1954. Thereafter, on May 23, 1955, an instrument dated May 1, 1946 was admitted to probate by the Izard Probate Court as Mitchell's last will and testament. The appellant, Forrest Mitchell, has appealed from said order admitting the will to probate.

This is the second appearance of the instant case before this court. The first case is found in *Miller* v. *Mitchell,* 224 Ark. 585, 275 S. W. 2d 3, whereby this court held that the will in question was properly executed. The appellant now contends that the deceased did not have mental capacity to make a will, at the time of its

execution; also that the deceased was unlawfully coerced and influenced to execute said will.

The record discloses that the deceased had been married twice, Susie Mitchell being his first wife and the mother of the deceased's only child, the appellant herein. The deceased and the appellant's mother were separated when appellant was about two years old and they remained separated for a period of fourteen years. When the appellant was sixteen years old his parents were re-united and he lived with them until he was twenty-one years of age.

In 1934, a short time after the death of the appellant's mother, John T. Mitchell married Martha Mitchell, who is now his widow. There were no children born of this union, however, Martha Mitchell had two sons, John F. Miller, the appellee here, and L. E. Owens. These two step-sons worked the Mitchell place and farmed it until the time of John Mitchell's death, a period of twenty years.

Witnesses for appellant testified that deceased was injured by a runaway team in 1944 and was accidentally shot in the back of the head in 1945: that the two incidents affected the deceased's mind so that thereafter he was not mentally capable of transacting his business; that deceased was dominated by his second wife to the extent that she took over and managed his business affairs; that at times the deceased would not recognize them, however, when they identified themselves he would be glad to see them. One witness testified that he reached an oral agreement with the deceased to buy some of the deceased's land, however, the wife stopped the sale by saying that the deceased had no land for sale. A similar incident occurred when the wife stopped the sale of two heifers.

Appellee presented evidence to the effect that the deceased was mentally competent at the time he made and executed his will and that no one coerced him or interfered with his making of the will. Three disinterested witnesses testified that the deceased was satisfied with

the preparation of his will by an attorney and that he was mentally competent at the time of the execution of the will; that thereafter, the deceased continued to transact his own business until shortly before the time of his death in 1954.

We think the evidence as to the condition of the deceased's mind, at the time he executed the will, preponderates in favor of his competency. The evidence of undue influence and coercion is inconclusive and of a spotty nature. It must be concluded that the deceased knew the provisions of his will and that these provisions were satisfactory to him. He had ample opportunity to change the provisions of the will, if he had so desired.

This court has held many times that the burden of **proving mental incapacity** to make a will rests on the one alleging it. *Thiel Special Adm.* v. *Mobley*, 223 Ark. 167, 265 S. W. 2d 507. There is no evidence of undue influence being exercised by the principal beneficiaries upon the deceased, at the time of the execution of the will. *Puryear* v. *Puryear*, 192 Ark. 692, 94 S. W. 2d 695. The testimony reveals that the beneficiaries took no part in the preparation of the deceased's will nor did they make any suggestions to the deceased as to the disposition of his property.

The Chancellor saw and heard the witnesses and admitted the will to probate. We cannot say his findings are against the preponderance of the evidence.

Affirmed.